IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GWENDOLYN R., :
:
    Plaintiff, :
:
v. : CIVIL ACTION NO.
: 1:18-CV-2046-LTW
ANDREW SAUL, Commissioner of :
Social Security, :
:
    Defendant. :

**ORDER AND OPINION ON AN APPEAL FROM A**
**<u>SOCIAL SECURITY DISABILITY ACTION</u>[1]**

Plaintiff protectively filed both a Title II application for a period of disability and disability insurance benefits ("DIB") and a Title XVI application for supplemental security income ("SSI"), alleging she became disabled on November 29, 2016. Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) and to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's claims.

On December 2, 2016, Plaintiff filed applications for DIB and SSI benefits alleging disability beginning on November 29, 2016, due to degenerative disc disease of the lumbar spine. (Transcript ("Tr.") 224-234). After Plaintiff's applications were

---

[1] The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (<u>See</u> June 12, 2018 Docket Entry). Therefore, this Order constitutes a Final Order of the Court.

denied initially on March 2, 2017, and on reconsideration on June 15, 2017, Plaintiff appealed the denial to an Administrative Law Judge ("ALJ"), who denied Plaintiff's claims on November 29, 2017, finding Plaintiff was not disabled. (Tr. 11-26). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied Plaintiff's request for review on March 5, 2018. (Tr. 1-6). Plaintiff then appealed the decision to this Court. (Doc. 3). This case is now before the undersigned upon the administrative record and the parties' pleadings and briefs, and is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

For the reasons set forth below, it is **ORDERED** that the decision of the Commissioner is hereby **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this opinion.

## I. STANDARD FOR DETERMINING DISABILITY

An individual is considered to be disabled for purposes of disability benefits if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable

2

to do his or her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B)-(G); see also 42 U.S.C. § 423(d)(2)-(3).

The burden of proof in a social security disability case is divided between the claimant and the Commissioner. The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that he or she is unable to perform his or her former type of work. Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering claimant's age, education, work experience, and impairment, there are some other types of jobs that exist in the national economy that the claimant can perform. The overall burden, however, rests upon the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

As summarized below, a five-step sequential analysis must be used when evaluating a disability claim.

(1) The Commissioner must determine whether the applicant is currently working; if so, the claim is denied.

(2) The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments significantly limits the individual's physical or mental ability to do basic work activities; if not, the claim is denied.

(3) The Commissioner must determine whether the impairment equals or exceeds in severity certain impairments described in the impairment listings in the regulations; if it does, the claimant is automatically entitled to disability benefits.

3

(4) The Commissioner must determine whether the applicant has sufficient residual functional capacity to perform past work; if so, the claim is denied.

(5) The Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other gainful and substantial work within the economy; if so, the claim is denied.

See 20 C.F.R. §§ 416.920-416.976.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE ALJ

The ALJ made the following findings of fact and conclusions of law:

(1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

(2) The claimant has not engaged in substantial gainful activity since November 29, 2016, the alleged onset date (20 C.F.R. §§ 404.1571, et seq., 416.971, et seq.).

(3) The claimant has the following severe impairment: degenerative disc disease of the lumbar spine (20 C.F.R. §§ 404.1520(c), 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404. 1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

(5) The claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The claimant can perform frequent climbing of ramps and stairs; ladders, ropes, and scaffolds; and balancing. The claimant can perform occasional stooping. The claimant can frequently kneel. The claimant can perform occasional crouching and frequent crawling.

(6) The claimant is capable of performing past relevant work as a customer service representative and cashier checker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R.§§ 404.1565 and 416.965).

4

(7) The claimant has not been under a disability, as defined in the Social Security Act, from November 29, 2016, through the date of this decision (C.F..R. §§ 404.1520(f) and 416.9200(f)).

(Tr. 17-22).

## III. CLAIMS OF ERROR

Plaintiff alleges the decision of the Commissioner is in error for the reasons set forth below.

A. The ALJ failed to follow the "slight abnormality" standard in finding Plaintiff's depression does not constitute a severe impairment;

B. The ALJ failed to afford proper weight to the opinion of Dr. Ginari Price, Plaintiff's treating physician.

(Pl.'s Br. 1, Doc. 9).

## IV. SCOPE OF JUDICIAL REVIEW

The scope of judicial review of the Commissioner's denial of social security benefits is limited. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. The only function of the court is to determine whether there is substantial evidence in the record to support the findings and decision of the Commissioner and whether proper legal standards were applied in the fact-finding process. The Commissioner's findings are conclusive if supported by substantial evidence and proper legal standards were applied. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v. Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th

5

Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, our review of the ALJ's application of legal principles is plenary. Walker, 826 F.2d at 999. The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence-even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam).

## V.  BACKGROUND FACTS

Plaintiff, who was sixty years old on her alleged onset date, has a high school equivalency degree (GED), vocational training as a certified nurse assistant ("CNA"), patient technician, and past work experience as a customer service representative and cashier checker. (Tr. 34-50, 280-81, 307-14). From November 2011 until November 29, 2016, Plaintiff worked as a Direct Care Professional cooking, cleaning, and taking care of three adults who resided in an in-home facility. (Tr. 40, 289). Plaintiff testified

6

that she quit working in November 2016 because she was "hurting." (Tr. 40). Plaintiff alleges a disability onset date of November 29, 2016, and that she is disabled due to degenerative disc disease of the lumbar spine and depression. (Tr. 40, 83, 98, 279). Plaintiff has a driver's license and is able to drive. (Tr. 38).

After reviewing the evidence of record and hearing testimony, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine is a severe impairment that significantly limits Plaintiff's ability to perform basic work activities. (Tr. 17). The ALJ also found Plaintiff's medically determinable impairments of depressive disorder and bipolar disorder, considered singly and in combination, do not cause more than minimal limitations in her ability to perform basic mental work activities and are therefore non-severe impairments. (Id.). The ALJ proceeded to assess Plaintiff's residual functional capacity ("RFC"), finding Plaintiff retained the RFC to perform a range of light work; she can frequently climb ramps, stairs, ladders, ropes, and scaffolds, and balance; she can occasionally stoop and crouch; and she can frequently kneel and crawl. (Tr. 18). Relying on testimony from a vocational expert (VE), the ALJ found Plaintiff could perform her past relevant work as a customer service representative and cashier checker. (Tr. 62). Therefore, the ALJ found Plaintiff was not disabled. (Id.). The medical evidence has been summarized in the body of the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## VI. ANALYSIS OF CLAIMS OF ERROR

### A. The ALJ Did Not Properly Evaluate the Medical Opinion Evidence

Plaintiff argues the Commissioner's decision should be reversed because the ALJ should have found her depression to be a severe impairment due to its impact on her ability to work. Plaintiff also argues the ALJ's decision should be reversed because the ALJ failed to afford proper weight to the opinion of Dr. Ginari Price, Plaintiff's treating physician. The Commissioner contends in response that (1) the ALJ properly considered the medical evidence of record in assessing Plaintiff's RFC; (2) the record, as developed by the ALJ, provides substantial evidence to support the ALJ's determination that Plaintiff's depression was not a severe impairment; and (3) the ALJ provided good cause for assigning little weight to Dr. Price's limitations. The Court finds the Commissioner's final decision is due to be reversed and remanded because the Court is unable to conclude that the ALJ (1) properly considered Dr. Price's treatment records detailing Plaintiff's history of receiving mental health treatment, and (2) properly weighed the medical opinion evidence.

#### 1. The ALJ's Review of the Mental Health Evidence

At step two of the sequential evaluation process, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine to be a severe impairment. (Tr. 17). The ALJ also found Plaintiff's mental impairments of depressive disorder and bipolar disorder, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and therefore

8

were non-severe. (Id.). In making this finding, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (Id.).

The ALJ then considered the four areas of mental functioning in conjunction with the record medical evidence. (Tr. 17). In doing, the ALJ summarily discussed Plaintiff's mental health treatment history in five sentences. (Id.). In four of those sentences, the ALJ discussed the results of one mental status examination of Plaintiff that occurred on December 13, 2016. (Id.). The ALJ observed that a mental status examination dated December 13, 2016, revealed Plaintiff's affect was full range; her thought process was linear and goal directed; her attention, concentration, and memory were described as being intact; and she was described as being of average intelligence with good insight and fair judgment. (Id.). The administrative record shows that the ALJ is referring to Dr. Price's initial examination, although the ALJ does not mention Dr. Price by name. (Tr. 17; Exhibit 3F). The ALJ also noted Plaintiff was recommended for psychotherapy treatment, but **"there were few mental health treatment records**." (Id.) (emphasis added). The Court notes that the ALJ's statement that there were "few mental health treatment records" is in error because the record

9

AO 72A
(Rev.8/82)

reveals that after Plaintiff's initial December 2016 evaluation by Dr. Price, Plaintiff returned to his office almost monthly thereafter. Plaintiff presented to Dr. Price's office (doing business as Psycare) for treatment on January 11, 2017; March 10, 2017; May 5, 2017; June 5, 2017; July 14, 2017; August 4, 2017; and September 8, 2017. (Tr. 469-77, 507-23). Because the ALJ states that there were "few treatment records" and did not discuss any of those medical records or Dr. Price's findings and diagnoses on those dates, it is unclear to the Court whether the ALJ properly considered Plaintiff's mental health records in their entirety or that she even considered Dr. Price a treating physician.

Presumably, in an attempt to summarize Plaintiff's remaining mental health treatment records, the ALJ further noted that "[a]t times, the claimant's affect was described as being sad and her mood was not "happy," but there was no indication that the claimant required ongoing hospitalizations or documented suicide attempts due to her mental issues." (Tr. 17). The ALJ did not discuss or otherwise mention Plaintiff's mental health treatment records or Dr. Price's diagnoses. Instead, the ALJ simply cited Exhibits 8F and 11F. Had the ALJ properly reviewed Dr. Price's treatment notes, the ALJ would have observed, among other things, that the severity of Plaintiff mental impairments appears to have waxed and waned (based on her reported symptoms) as her treatment progressed. During Plaintiff's initial examination in December 2016 and her January and March 2017 examinations, Dr. Price diagnosed Plaintiff with Major depressive disorder, recurrent, mild. (Tr. 407, 473, 475). When Plaintiff returned in May 2017, however, Dr. Price diagnosed Plaintiff with "Major depressive disorder,

10

recurrent severe," then doubled her prescription for Celexa from 20mg to 40mg daily for depression/anxiety, and continued her on Clonidine (for anxiety/panic attacks). (Tr. 471). Similar diagnoses and increases in Plaintiff's depressive symptoms and prescriptions are revealed in Plaintiff's treatment notes as follows:

* June 2017 (mood - depressed; affect - sad, congruent; thought content- depression with irritability and anxiety; diagnosis - Major depressive disorder, recurrent severe; and she was prescribed 150mg of Wellbutrin (for depression) in addition to Celexa and Clonidine). (Tr. 508-09);

* July 2017 (thought content - depression with irritability and anxiety; diagnosis - Major depressive disorder, recurrent severe; and her prescription of Wellbutrin was increased to 300mg in addition to her prescriptions for Celexa and Clonidine). (Tr. 512-14);

* August 2017 (thought content - depression and anxiety; diagnosis - Major depressive disorder, recurrent severe; her Celexa prescription was discontinued due to inefficacy, instead Flucoxamine was prescribed for depression/anxiety, Zofran was added for nausea, and Wellbutrin and Clonidine were continued). (Tr. 515-17); and

* September 8, 2017 (thought content - depression and anxiety; diagnosis - Major depressive disorder, recurrent severe; and her prescriptions for Wellbutrin, Clonidine, and Flucoxamine were continued). (Tr. 522).

Although an ALJ is not required to discuss every piece of record evidence, the ALJ cannot pick and choose which evidence supports his decision while disregarding evidence to the contrary. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986). Here, the ALJ's failure to discuss, in any meaningful way, Plaintiff's mental health treatment records at step two is reversible error. See Smith v. Colvin, No. 1:15-23010-CIV, 2016 WL 5369305, at *5 (S.D. Fla. Sept. 26, 2016) (holding failure to address medical report and treating physicians' opinions regarding non-severe impairment was

11

reversible error); Newton v. Astrue, No. 1:06-CV-1542-AJB, 2008 WL 915923, at *9 (N.D. Ga. Apr. 1, 2008) (holding failure to discuss non-severe impairment was reversible error); see also Wilson-Gantt v. Comm'r of Soc. Sec., No. 6:15-CV-257-ORL-GJK, 2016 WL 4702420, at *7 (M.D. Fla. Sept. 8, 2016) ("After erroneously determining that claimant's mental impairments were non-severe at step-two, the [ALJ] never mentions them again: . . . Thus, it is apparent from the face of the ALJ's decision that the ALJ's error at Step two is not harmless." (internal citations omitted)).

### 2. Standard for Evaluating Medical Opinions

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians' [opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

12

With regard to a treating physician, the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1237, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by

13

objective medical evidence).

The opinions of nonexamining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981).

### 3 The ALJ's Weighing of the Opinion of Dr. Genari Price, M.D.

On September 10, 2017, Dr. Genari Price, Plaintiff's treating physician completed a three-paged, pre-printed form rating Plaintiff's psychiatric/psychological impairment within the context of her capacity over time to sustain an activity over a normal workday and workweek. (Tr. 524-26). Therein, Dr. Price opined, in relevant part, that Plaintiff had a marked[2] degree of limitation in her: constriction of interests; deterioration in her personal habits; daily activities, ability to understand, remember, and carry out complex repetitive tasks; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; and be punctual within customary tolerances. (Tr. 525-26). Dr. Price also opined that Plaintiff was extremely[3] limited in her ability to complete a normal workday without interruptions from

---

[2] Marked is defined on the form as an impairment which seriously affects ability to function. (Tr. 525).

[3] Extreme is defined simply as an extreme impairment of ability to function. (Tr. 525).

14

psychologically based symptoms as well as in her ability to respond to customary work pressures. (Tr. 526). In the comment section of the form, Dr. Price noted "The patient is affectively labile with depression and irritability. The patient is isolative and has impaired concentration/decision-making capacity. The patient is extremely anxious and does not respond appropriately in social situations." (Tr. 527).

The ALJ reviewed the opinion of Dr. Price and provided two reasons for not granting the opinion substantial weight. First, the ALJ indicated "[l]ittle weight is given the opinion of Dr. Price because [his] opinion is quite conclusory providing very little explanation of the evidence relied on in forming that opinion." (Tr. 17). Second, the ALJ stated in a cursory fashion that "the opinion is contrary to the [State agency consultants], who had the benefit of reviewing the claimant's medical files to formulating their opinions." (Tr. 17-18). The ALJ gave the State agency consultants' opinions "some weight." (Tr. 20). While the ALJ articulated the weight she assigned to the opinion of Dr. Price, the treating physician, she did not clearly articulate or provide substantial evidence in support of her reasons for discounting his opinion in favor of the non-examining consultative physicians. The ALJ's generalized statements, unaccompanied by more specific statements and record citations are insufficient to establish good cause for giving a treating physician's opinion less than substantial or considerable weight, and fail to state with particularity the weight given to the physician's opinion and the reasons therefore. See Winschel, 631 F.3d at 1178-79.

15

With respect to the ALJ's first reason, on this record, the ALJ should not have discounted the treating physician's opinion as "quite conclusory providing very little explanation of the evidence relied on in forming that opinion." While it is it is true that an ALJ is justified in discounting a physician's report when the treating physician's report is conclusory, the report should not be considered in a vacuum; and instead, it should be viewed in light of the doctor's earlier reports. See Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1262 (11th Cir. 2019) (holding ALJ erred when discounting the opinions of disability claimant's treating physicians, by failing to interpret the physicians' answers to their questionnaires in light of their treatment notes.) (citing Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam)). In other words, in this case, the ALJ should have interpreted Dr. Price's answers to the questionnaire in light of his treatment notes. The ALJ, however, did not discuss Dr. Price's treatments notes or consider them as the bases for his opinion.

The ALJ's second reason for discounting the opinion of Dr. Price is similarly flawed. The ALJ discounted the opinion of Dr. Price as contrary to the opinions of the State agency non-examining consultants "who had the benefit of reviewing [Plaintiff's] medical files prior to forming their opinion." (Tr. 18). In essence, the ALJ gave little weight to the opinion of Dr. Price, Plaintiff's treating physician who (1) treated or oversaw Plaintiff's mental health treatment on nine occasions over a ten month period; (2) documented Plaintiff's mental health symptoms and physical exam results; (3) noted changes in the severity of Plaintiff's major depressive disorder from mild to severe; (4)

16

managed Plaintiff's treatment plan; and (5) prescribed Plaintiff's medications and altered the doses based on her response. Instead, the ALJ appears to have given more weight to the opinions of the State agency consultants who never saw or examined Plaintiff, but reviewed her record. The ALJ's reason for discounting the opinion of Dr. Price was based on an incomplete analysis of the record evidence.

The ALJ does not mention the State agency evaluators by name or provide an explicit or complete summary of their opinions so as to indicate to which opinion she is referring. (See Tr. 17-18). After reviewing the parties' respective briefs and the administrative transcript, however, it appears the State agency evaluators were Irma Best, Ph.D. and William Gore, Ph.D., who in February and June 6, 2017, reviewed Plaintiff's medical record, and concluded that she had only mild limitations in her ability to adapt and manage herself. (Tr. 88-89, 118-119). Both doctors completed Psychiatric Review Technique forms and concluded that Plaintiff's mental condition is not severe. (Tr. 89, 119). At the time that Dr. Best completed a Psychiatric Review Technique ("PRT") form on February 24, 2017, Plaintiff's mental health treatment record was incomplete, and Plaintiff had only been treated by Dr. Price on two occasions. (Tr. 89). When Dr. Gore completed his PRT form on June 6, 2017, the record was also incomplete, and Plaintiff had only been treated by Dr. Gore on four occasions. (Tr. 119). Therefore, neither State Agency consultant had the benefit of Plaintiff's full mental health records when they issued their opinoins.

While assigning "little" weight to the opinion of Dr. Price, and assigning "some"

weight to the opinions of the State agency non-examining consultants, Drs. Best and Gore, the ALJ appeared to attach greater weight to the opinion of non-examining State agency consultants than the opinion of Plaintiff's treating physician. However, "[t]he opinions of nonexamining, reviewing physicians, . . . when contrary to those of the examining physicians, are entitled to little weight . . . " Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam). When presented with two medical opinions that, by all appearances, were based on review of the same evidence, the ALJ erred in crediting the opinion of the non-examiners over that of the treating physician, absent other reasons for doing so that were both clearly stated and supported by substantial evidence.

Thus, the ALJ failed to give sufficient reasons for assigning "little" weight to Dr. Price's opinion that were both clearly articulated and supported by substantial evidence. The ALJ's written decision does not satisfy this legal standard. It has left the Court in the dark as to whether the decision is in accordance with proper legal principles and was based on substantial evidence. See Coker v. Colvin, No. 2:15cv436-SRW, 2016 WL 7159498, at *8 (M.D. Ala. Dec. 7, 2016) (remanding to the Commissioner because of the ALJ's lack of specificity when rejecting a treating physician's opinion evidence). A court cannot simply infer that proper legal standards were applied. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1260 (11th Cir. 2007) ("The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates

reversal.") (bracketed text in original); Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991) (the ALJ errs as a matter of law if the written decision lacks enough information for the court to review the ALJ's findings to ensure that proper legal standards were employed and that the factual findings are based on substantial evidence). The Court must conclude here that the ALJ's decision is not based on substantial evidence because there is insufficient information for the court to determine that the ALJ considered Dr. Price's treating medical source opinion under the proper legal standards.[4] Under the circumstances, the Court must remand this matter for additional proceedings. See also Didier v. Berryhill, No. 3:16CV332-SRW, 2018 WL 1583136, at *5 (M.D. Ala. Mar. 30, 2018).

Since reversal is necessary, the Court must address Plaintiff's request that the case be remanded for an award of benefits. (Def.'s Br. 17, Doc. 9). Reversal for an award of benefits is only appropriate either where the Commissioner has already considered the essential evidence and it establishes disability beyond a doubt, or where the claimant

---

[4] In his brief, the Commissioner sets forth evidence on which the ALJ could have relied. (Def. Br. 8-10, 13, Doc. 13). There may very well be ample reasons, supported by the record, for the ALJ's ultimate conclusion. However, because the ALJ did not state the Commissioner's reasons, the Court cannot evaluate them for substantial evidentiary support. The Court must rely on the ALJ's consideration, or lack thereof, of Dr. Price's opinion, and the Commissioner may not posit his own reasons for the ALJ's action, whether or not the same is supported by some evidence in the record. The Court cannot rely upon the Commissioner's justification for discounting the opinion of treating or examining physicians. The Commissioner's argument on the issue is an impermissible post hoc rationalization which does not provide a basis for judicial review of an administrative decision. Baker v. Comm'r of Soc. Sec., 384 F. App'x. 893, 896 (11th Cir. 2010). The responsibility for evaluating the evidence is placed with the ALJ.

has suffered an injustice. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993) (disability beyond a doubt warrants award of benefits). Here, reversal is due to the lack of substantial evidence supporting the ALJ's reasons for assigning the opinion of Dr. Price less than substantial or considerable weight. Neither the reason necessitating reversal nor the record establish that Plaintiff is disabled beyond a doubt or that Plaintiff has suffered an injustice. Accordingly, the matter shall be remanded for further proceedings.

On remand the ALJ should reevaluate the medical opinions of record, and state with particularity the weight afforded to each opinion; if an opinion of a treating physician is discounted, adequate reasons showing good cause for discounting it shall be provided and shall be supported by substantial evidence.

## VII. CONCLUSION

For the reasons stated above, the decision of the Commissioner is hereby **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**IT IS SO ORDERED** this __30__ day of September, 2019.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)